UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINDA K. BAKER,<br><br>             Plaintiff,<br><br>      v.<br><br>COLONIAL LIFE & ACCIDENT INSURANCE CO.,<br><br>            Defendant. | CASE NO. C14-0319JLR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS STATE LAW CLAIMS |

## I.   INTRODUCTION

Before the court is Defendant Colonial Life & Accident Insurance Co.'s ("Colonial Life") motion to dismiss Plaintiff Linda K. Baker's state law claims pursuant to Federal Rule of Civil Procedure 12(c). (*See generally* Mot. (Dkt. # 9).) The court converts Colonial Life's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) because both parties present to the court matters outside the pleadings. *See* Fed. R. Civ. P. 12(d); (*see generally* Mot.; Resp. (Dkt. # 13); Reply (Dkt. # 19)). Having

ORDER- 1

considered the submissions of the parties, the balance of the record, and the relevant law, and considering itself fully advised, the court DENIES Colonial Life's motion without prejudice to raising the arguments made therein in a later motion.

## II.   FACTS

This is a case about insurance benefits.  Ms. Baker is insured by Colonial Life under Colonial Life & Accident Insurance Company, Policy No. "4 3766-569 80 Linda." (Compl. (Dkt. # 1-2) ¶¶ 35, 36.)  Ms. Baker was diagnosed with cancer in November 2012, which triggered her benefits under the policy.  (*Id.* ¶ 38.)  Ms. Baker submitted a claim for her loss (*id.* ¶ 39), but she alleges that Colonial Life has unreasonably failed to pay her the benefits owed under the policy.  (*Id.* ¶ 45.)  While Colonial Life has paid some benefits, Ms. Baker alleges that not all claims have been paid.  (*Id.* ¶ 41.)  Ms. Baker claims that she has invested a significant amount of time on this insurance claim because of Colonial Life's failure to investigate and failure to pay, and that the process has taken an emotional and financial toll on her.  (*Id.* ¶ 48.)  Ms. Baker filed this complaint in King County Superior Court, alleging claims for breach of contract, bad faith, negligent claims handling, constructive fraud, violations of unfair claim handling regulations, and claims under Washington's Insurance Fair Conduct Act and the Consumer Protection Act.  (*See generally* Compl.)

Colonial Life removed the case to federal court.  (*See* Not. of Removal (Dkt. # 1) at 1.)  Colonial Life asserts that the court has federal question jurisdiction under 28 U.S.C. § 1331 because Ms. Baker's complaint seeks benefits under an insurance policy that is part of an "employee welfare benefit plan" governed by the federal Employee

ORDER- 2

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"). (*Id.* at 2.) Colonial Life also asserts that diversity of citizenship under 28 U.S.C. § 1332 exists because Ms. Baker is a Washington citizen, Colonial Life is a citizen of the State of South Carolina, and the amount in controversy exceeds $75,000.00. (*Id.* at 9-10.)

In its motion, Colonial Life argues that Ms. Baker's state law claims are preempted because her claims all "relate to" a policy regulated by ERISA. (Mot. at 1.) Colonial Life contends that Ms. Baker's policy does not satisfy the four requirements of the Department of Labor's "safe harbor" regulation that excludes certain group insurance plans from ERISA's definition of an "employee welfare benefit plan." (*Id.* at 6.) Colonial Life asserts that, therefore, Ms. Baker's policy is an ERISA plan, and her state law claims should be dismissed because ERISA provides the exclusive remedy for such claims. (*Id.* at 1.) In making its arguments, Colonial Life relies on exhibits and declarations submitted with its notice of removal and with Ms. Baker's response to Colonial Life's motion to dismiss. (*See generally* Mot.; Reply.)

Ms. Baker responds that her Colonial Life policy meets the requirements of the safe harbor. (Resp. at 10.) She states that her employer, Keller Rohrback, makes no contributions to the Colonial Life insurance premiums; that employee participation in the Colonial Life plan is completely voluntary; that Keller Rohrback does not endorse the Colonial Life program; and that Keller Rohrback does not receive consideration in connection with the program. (*Id.* at 1-2.) Ms. Baker submits two declarations and multiple exhibits to support these assertions. (*See generally* Resp.; Peaquin Decl. (Dkt # 14); Baker Decl. (Dkt # 15).) Ms. Baker contends that because the Colonial Life policy

ORDER- 3

falls under the safe harbor, the policy is not an employee benefit plan under ERISA and therefore ERISA does not preempt her state law claims. (Resp. at 10.)

### III. ANALYSIS

#### A. Judgment on the Pleadings Standard

Colonial Life moves to dismiss Ms. Baker's claims pursuant to Rule 12(c). (*See generally* Mot.) Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings "is properly granted when, taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of law." *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011). The court evaluates a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). When ruling on a motion to dismiss, a court may consider the pleadings, documents attached to the pleadings, documents incorporated by reference in the pleadings, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

#### B. Colonial Life's Motion to Dismiss and Ms. Baker's Response

Here, it is appropriate to convert Colonial Life's motion into a motion for summary judgment. Both parties rely extensively on declarations and exhibits outside of

the pleadings to supply facts supporting their positions.  (*See generally* Mot.; Resp.; Reply.)  In its motion to dismiss, Colonial Life cites a Form 5500, a Plan Administrator Membership Form, selected billing statements, and an email.  (Mot. at 4-6.)  These documents are contained in exhibits attached to the declaration of Joel Newman, which Colonial Life submitted in support of its notice of removal.  (*See* Newman Decl. (Dkt. # 3).)  Ms. Baker submits two declarations with attached exhibits with her response (*see* Peaquin Decl.; Baker Decl.) and cites to these declarations, invoices, and an email throughout the response.  (*See generally* Resp.)  Colonial Life's reply further cites declarations, forms, invoices, and an email—all presented outside the pleadings.  (*See generally* Reply.)   Rule 12(d) requires the court to convert Colonial Life's Rule 12(c) motion to dismiss into a motion for summary judgment in order to consider these extraneous materials.  Fed. R. Civ. P. 12(d).

Rule 12(d) also demands that the parties be given a reasonable opportunity to present all material pertinent to the motion.  *Id.*  Satisfying this "reasonable opportunity" requirement does not mandate formal notice, but instead requires that the parties be "fairly apprised that the court [will] look beyond the pleadings" and transform the motion to dismiss into a motion for summary judgment.  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (quoting *Garaux v. Pulley*, 793 F.2d 437, 439 (9th Cir. 1984)).  "[A] 'represented party who submits matters outside the pleadings to the judge and invites consideration of them has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment.'"  *Olsen*, 363 F.3d at 922 (quoting *San Pedro Hotel Co. v. City of*

*L.A.*, 159 F.3d 470, 477 (9th Cir. 1998)). Here, the parties have sufficient notice that the court will convert Colonial Life's motion to dismiss into a motion for summary judgment because both parties present and rely on extraneous material. *See id.* at 922 (finding a party had sufficient notice of the district court's decision to convert motions to dismiss into motions for summary judgment when the party included extraneous material in her opposition to the motions to dismiss). Therefore, the court converts Colonial Life's Rule 12(c) motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d).

**C.     Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

> [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). The court is "required to view the facts and draw reasonable inferences in the light most favorable to

the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255.

**D.     Relevant Law Pertaining to ERISA**

The critical issue for the court to decide on this motion is whether ERISA preempts Ms. Baker's state law claims.  Colonial Life argues that ERISA preempts Ms. Baker's state law claims because her Colonial Life policy is an employee welfare benefit plan governed by ERISA.  (Mot. at 13.)  In general, ERISA broadly preempts any and all state laws as they "relate to" an employee benefit plan as described in the statute.  29 U.S.C. § 1144(a); *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987).  A plan qualifies as an employee welfare benefit plan under ERISA when the plan is "established or maintained" by an employer for the purpose of providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, [or] death . . ." to plan participants or their beneficiaries.  29 U.S.C. § 1002(1); *see also Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 491-92 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989).

Also relevant here is the ERISA "safe harbor" established by Department of Labor regulations.  29 C.F.R. § 2510.3-1(j).  The safe harbor sets forth four conditions under which certain group insurance programs are excluded from the definition of an employee welfare benefit plan under ERISA.  *Id.*  If a plan meets the safe harbor's requirements, then it is not an ERISA plan and ERISA preemption does not apply.  *See Zavora v. Paul*

*Revere Life Ins. Co.*, 145 F.3d 1118, 1120-21 (9th Cir. 1998). The four safe harbor elements are:

> (1) No contributions are made by an employer or employee organization;
> (2) Participation the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j); *see also Zavora*, 145 F.3d at 1120-21. A plan must satisfy all four safe harbor requirements to be exempt from ERISA. *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir. 2000).

Thus, in order to prevail on summary judgment, Colonial Life must show that the safe harbor does not apply. In other words, to prevail on summary judgment, Colonial Life must show that there is no genuine issue of material fact that Ms. Baker's policy fails to satisfy one or more of the safe harbor's requirements. *See* Fed. R. Civ. P. 56(a); *Zavora*, 145 F.3d at 1120-21 (9th Cir. 1998) (reversing summary judgment that ERISA applied and preempted state law claims because a party raised a triable issue of fact on the question of whether the plan met the safe harbor's third requirement).

**E.     Summary Judgment Is Not Appropriate**

Colonial Life does not meet this burden. There are genuine issues of material fact as to whether Ms. Baker's policy satisfies the safe harbor. For purposes of this motion,

ORDER- 8

the court will examine the parties' dispute over whether the policy meets the safe harbor's third requirement.[1] The third element of the safe harbor requires that "[t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer." 29 C.F.R. § 2510.3-1(j)(3).

Colonial Life argues that the third safe harbor element is not met. (Mot. at 7.) Colonial Life contends that Keller Rohrback endorsed Ms. Baker's policy. (*Id.*) Colonial Life presents evidence that Keller Rohrback paid plan premiums, acted as Plan Administrator, and promoted the plan "by showing a PowerPoint presentation advertising the Plan and educating employees about the benefits of participating in the Plan." (Mot. at 8-9.) Colonial Life also presents evidence that Keller Rohrback actively participated in the selection of the policy, including the selection of benefits and levels of coverage to be offered. (Reply at 6.) Colonial Life relies on exhibits and on the declaration of Mr. Newman, a District General Agent for Colonial Life, as evidence of Keller Rohrback's actions. (*See generally id.*; Newman Decl. ¶ 2.)

---

[1] The parties dispute the facts concerning each of the four safe harbor elements. (*See generally* Mot.; Resp.; Reply.) For example, Colonial Life argues that the first safe harbor element is not met because, as Mr. Newman testifies, "[t]he Group Billing Control File confirms the amounts that Keller Rohrback paid in insurance premiums related to the Plan each month." (Newman Decl. ¶ 4). Ms. Peaquin, however, testifies that "Keller Rohrback *does not* contribute to employees' premiums." (Peaquin Decl. ¶ 9 (emphasis in original).) The court will not examine the disputes regarding safe harbor elements one, two, and four because to deny summary judgment the court need only find the existence of issues of material fact as to one of the safe harbor requirements. *See Zavora*, 145 F.3d at 1120-21.

ORDER- 9

1        Ms. Baker disagrees.  (*See generally* Resp.)  She argues that the safe harbor's third
2   requirement is satisfied.  *Id.*  In particular, she responds that Keller Rohrback's only
3   functions were to allow Colonial Life to publicize its programs to employees, to deduct
4   premiums from participating employees' paychecks, and to remit those premiums to
5   Colonial Life—all actions that are expressly permitted by the safe harbor.  (Resp. at 16.)
6   Ms. Baker maintains that Keller Rohrback's designation as "Plan Administrator" is not
7   mentioned in the policy, and that "Administrator" is the label Colonial Life uses for the
8   person at Keller Rohrback who handles payroll deductions.  (*Id.* at 18.)  Furthermore, Ms.
9   Baker presents evidence that Keller Rohrback did not negotiate, explain, or pay for the
10  policies, and that it was Colonial Life that gave presentations related to the plan.  (*Id.* at
11  17-18.)  Ms. Baker asserts that Keller Rohrback did not endorse any insurance product
12  Colonial Life sold.  (*Id.* at 16.)  In making these arguments, Ms. Baker mainly cites to the
13  declaration of Patricia Peaquin, Keller Rohrback's Human Resources Director.  (*See*
14  *generally* Resp.; Peaquin Decl. ¶ 1.)
15       There is a clear dispute as to Keller Rohrback's actions with regard to the plan.
16  The parties primarily cite to declarations to establish whether Keller Rohrback did, or did
17  not, take steps such as actively selecting the policy, agreeing to act as Plan Administrator,
18  promoting the plan to employees, guaranteeing an employee participation level, and
19  endorsing Colonial Life insurance products.  These facts are crucial to determining
20  whether the safe harbor is met.  Whether Ms. Baker's policy meets the safe harbor's
21  requirements and thus is exempt from ERISA determines whether her state law claims
22  can proceed.  The facts surrounding the safe harbor determination will affect the outcome

1 of Ms. Baker's suit, and are therefore material. *See Liberty Lobby*, 477 U.S. at 248.

2 Furthermore, this factual dispute is "genuine" because reasonable persons could disagree

3 about whether the facts claimed are true. *See Aydin Corp.*, 718 F.2d at 902. For

4 example, Mr. Newman testifies that "[f]or this account, there was a 15 % minimum

5 participation requirement on the disability coverage for the 109 employees of Keller

6 Rohrback, which Keller Rohrback met." (Newman Decl. ¶ 7.) Ms. Peaquin, however,

7 testifies that "Keller Rohrback does not guarantee any participation level by employees."

8 (Peaquin Decl. ¶ 18.) The court may not weigh evidence or make credibility

9 determinations in analyzing a motion for summary judgment. *Id.* at 255. To grant

10 Colonial Life's motion, the court would be required to weigh competing evidence.

11 Accordingly, summary judgment is not appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the court converts Colonial Life's motion to dismiss Ms. Baker's state law claims into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) and DENIES the motion without prejudice to raising the arguments made therein in a later motion based on a more complete record.

Dated this 30th day of April, 2014.

JAMES L. ROBART
United States District Judge

ORDER- 11